## CITY OF ENNIS v. U. M. GILDER.

### Decided April 29, 1903.

**1.—Nuisance—Waterworks Dam.**

Where a dam, part of it a city's system of waterworks, was built across a running stream, which backed up on plaintiff's land for several hundred yards, and the varying rainfalls caused the lake so formed to rise and recede so that stagnant water remained on plaintiff's land, causing miasma and resulting malarial sickness, the lake was a nuisance to plaintiff's property, irrespective of whether or not the water spread over the land outside the previous channel of the stream.

**2.—Same—Municipal Corporation—Waterworks.**

While a municipal corporation may condemn land for public purposes, it has not the right, where such power has not been exercised, to create a nuisance by flooding the lands of a private citizen in providing a system of city waterworks.

**3.—Same—Abatement Election of Remedies—Estoppel.**

Where the land of a citizen is flooded by a city waterworks reservoir, he is not precluded from having an abatement of the nuisance by reason of the fact that his petition, as originally filed. merely asked for damages to date, nor by the fact that his claim for damages has been barred by limitations.

**4.—Same—Decree of Abatement.**

Where, in an action to abate as a nuisance a city waterworks dam the decree directed that the city alter the dam's construction, or the sluices and waterways, in such manner and to such extent that the dam would not cause back water to stand on plaintiff's land, the decree was not objectionable as being vague and indefinite and as not instructing the defendant city what it should do.

Error from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

*H. H. Eubanks* and *Templeton & Harding,* for plaintiff in error.

*A. L. Love* and *J. W. Stinnett,* for defendant in error.

JAMES, CHIEF JUSTICE.—The original petition was filed in November, 1900. The third amended original petition, filed December 17, 1901, upon which the case was heard, alleged in substance that plaintiff Gilder owned a certain tract of land, along and across which runs a natural water course, the banks of which contain valuable timber, and near which he had a valuable tenant house; that in 1895 the city of Ennis caused to be erected below plaintiff's land and across said water course a dam, which caused it at times to back up over and overflow said land for a great distance; that at different times during this year (1900), and especially on or about October 1st, the back water extended into plaintiff's land from 500 to 700 yards, covering an area on either side of the stream of from 25 to 100 yards; that said back water has at times since that date receded, leaving on plaintiff's land stagnant pools, decaying timber and vegetation, which has created an unhealthful atmosphere, rendering the places improved by plaintiff for the occupancy of his tenants unfit for habitation, so that it is now impracticable and dangerous to live in the same, to plaintiff's damage $800; that the large trees have been caused to die and decay by reason of said back water, to plaintiff's damage in the sum of $500, and the low lands along the banks of said stream have been rendered unfit for cultivation, to his damage $1000; that such injuries are the direct results of negligence and of the utter disregard of defendant or its agents of plaintiff's possession and rights; that said acts and said overflow of said land create a permanent nuisance. Wherefore he prays that said dam be cut down and so reduced that the overflow therefrom of plaintiff's land will no longer continue; that he have judgment for the sums prayed for, and for the abatement of the nuisances, etc.

The third amended original answer pleaded that for the health, safety and needs of the city, it became imperative to have a system of water-

works; that it purchased a tract of land just below the land claimed by plaintiff, same being the only place near Ennis suitable for a reservoir; that in 1895 it constructed in a proper manner a permanent dam on its own land in order to create such reservoir, which filled with water, and which, in the spring of 1896, backed up the branch for some distance and on the land claimed by plaintiff, and so remained to the commencement of this suit; that said dam was permanent from the first, and is still so intended, and was and is still intended to catch and hold water to its utmost capacity, and only recedes in times of extreme drought; that the purpose is and always has been to keep the same full of water, which has been done and was done up to the filing of this suit, and will so continue in ordinary seasons; that said reservoir is an absolute necessity for the city of Ennis and its inhabitants, and was constructed with the least possible inconvenience to anyone; that it has in fact benefited plaintiff; that it would be impossible to make a reservoir in any other place; that the city has not the means to do so; that it issued bonds in a large sum to construct the dam, which bonds have been negotiated and taxes are annually levied to meet same.

That by reason of the above facts plaintiff has no cause of action for damages, nor to abate a nuisance, and furthermore, if plaintiff ever had a cause of action, it accrued more than two years before the commencement of this suit, and is barred by limitations, etc.

After hearing the evidence introduced by plaintiff, the court sustained defendant's demurrer to plaintiff's evidence as to damages on the ground of limitations, but overruled such demurrer as to abatement of nuisance, and after all the evidence was in, the court submitted to the jury certain special issues for findings, in response to which they found (1) that the dam was built and filled with water the first time in 1895; (2) that the reservoir has contained water ever since it was first filled; (3) that the dam is of a permanent character; and (4) that there is a reasonable probability, if the dam remains at its present height, that back water will be thrown back and caused to stand on plaintiff's land.

Thereupon a decree was rendered adjudging the dam and lake, as constructed and maintained, to be a nuisance and serious invasion of the rights of plaintiff, and decreeing that the city of Ennis change and alter the construction of the dam, or the sluices or wasteways thereof, in such manner and way and to the extent and effect that, after said change and alteration thereof, the dam will not cause back water therefrom to stand upon plaintiff's said land.

The case in this court is to some extent simplified by appellee in his brief declaring that he does not ask a reversal of the judgment on his cross-assignment, "but respectfully asks the court to pass upon same." We take this to mean that, in case the judgment should be reversed, he desires this court to pass on the questions connected with the claims for damages. As we have concluded the judgment ought to be affirmed, we take no notice of the cross-assignment.

32 Civil—23.

The undisputed evidence is that the branch in question, called "Mustang Creek," in its original state ran a considerable part of the time in seasonable years, and that until the dam was built there was no stagnant water in its channel. The dam was constructed in 1895, and since that time the lake formed by it has almost continuously backed and held water upon plaintiff's land a distance of several hundred yards. The exception was during the year preceding the trial, when the water was quite low in the lake owing to the dry season and an increased use of water in the city. Every large rain filled the lake. While the water thus stands on plaintiff's land, it will recede and rise again, and the uncontradicted testimony of physicians was that the presence of the lake causes more or less miasma; that the water overflowing and then receding would produce more malaria, and that there has been more malarial sickness on plaintiff's place since the lake was built than before.

These undisputed facts constitute the lake a nuisance as to plaintiff's property, and certainly so in connection with the finding of the jury that there is a reasonable probability, if the dam remains as it is, that the lake will be thrown back and caused to stand on the land.

It being contended under the sixth assignment that it was material matter, and one which should have been submitted to the jury, whether or not the water spreads over plaintiff's land or remains in the channel of the creek on plaintiff's land, we will state that in our opinion this fact was not essential to constitute the lake a nuisance, but if it were, we think the testimony clearly showed that, when full, the lake did extend beyond the channel of the creek and flooded plaintiff's low lands. Plaintiff and his witness, McGee, testified positively, in substance, that the water would overflow the low land and swags where the water would stand and stagnate. Matthews, one of defendant's witnesses, stated that when the dam is full the water on plaintiff's land is mostly in the channel, thus testifying that to some extent it went outside of the channel. Defendant's other witness, Briggs, stated merely that at such periods the water seemed to be confined to the channel. These were all the witnesses who gave evidence on the subject, and it can hardly be contended that the testimony of plaintiff and McGee was contradicted.

In view of what has just been stated, it is unnecessary to refer further to the fifth and sixth assignments of error, which will be overruled. Likewise we overrule the second assignment, which is that the court erred in entertaining the question of an abatement of the alleged nuisance, because the allegations of the petition did not authorize such relief.

The first, third and fourth assignments will be best disposed of by considering the propositions copied from appellant's brief:

"The dam having been constructed in 1895, and being permanent in its character, and having become filled with water in the spring of 1895, the cause of action, if any existed, arose at that time, and hence was barred long before the filing of this suit. (2)    More than five years having elapsed from the time the cause of action accrued up to the filing of their pleadings asking for an abatement of the dam, the cause

of action, if any existed, on this account was likewise barred by limitation. (3) Plaintiff having elected to sue for a money demand, and having been defeated by reason of limitation, was in no event entitled to relief by abatement and destruction of the dam. (4) The dam being permanent in its character, and plaintiff having elected to sue for damages, thereby licensed the continuation of the dam, and hence was not entitled to a decree having the same cut. (5) The city of Ennis being a municipal corporation, organized and acting under title 18 of the Revised Statutes, and having the right of condemnation when acting for the public good, can not be compelled to cut or remove the dam, and especially so after the cause of action for damages was barred by the statute of limitation."

The fifth of these propositions can not be sustained. A municipal corporation has no more right than an individual to maintain a nuisance. Cases may and do exist where what would ordinarily be a nuisance and abatable on that ground is, for special reasons, not so treated. An illustration of this will be found in the following cases: Aycock v. Brewing Assn., 26 Texas Civ. App., 341, 63 S. W. Rep., 953; Rische v. Texas Trans. Co., 27 Texas Civ. App., 33, 66 S. W. Rep., 324. But the case now before us does not come within any such rule. Nor does the fact that the city had power to condemn plaintiff's property make any difference, there having been no attempt to use such power.

The remainder of the propositions contend, in effect, that plaintiff has lost his right to abatement of the nuisance by reason of limitations and estoppel. This idea is based on these facts: that the dam and injury are permanent in their character; that the lake filled and the injury began in 1895, and plaintiff did not ask for an abatement until more than five years thereafter, and that plaintiff made an election of remedies when he filed his first petition for damages alone.

In cases such as the Rische case, above cited, there exists no remedy at all on the ground of nuisance, but only for damages for the permanent injury, and it would seem that if the right to sue for such damages becomes barred, the owner is without any remedy. But that is not this case. It is doubtless true that plaintiff might have brought an action for his entire damages for the permanent injury to his land, and a judgment for such damages might have been a bar to any further remedy. But the original petition in this case was not for such damages.

The invasion of plaintiff's property in the manner shown here was a physical appropriation, to a certain extent at least, and if the city desired the property, or an easement in it, for the purpose of its reservoir, it had the power of condemnation, and plaintiff had the right to be compensated before the taking. Being a nuisance, plaintiff had the right to have it abated so far as he was injuriously affected by it. He could have treated it as a permanent injury to his land, and proceeded to recover in damages the difference between the value of his property before and after the injury, but he was not required to do this. He had also

the right to have the nuisance abated, and in a proceeding to abate it, he undoubtedly could ask for such damages as he had suffered up to the time of the abatement. If he had brought suit originally for past and future damages as for permanent taking, we think in that case he could have, before judgment, amended and asked to have the dam abated as a nuisance. But in his original pleading he did not seek such recovery. It follows that his claim for damages might be barred, without impairing his right to abate the nuisance.

It can not be seriously claimed that the city could acquire any right in plaintiff's realty, by easement or otherwise, by adverse use that had existed for less than ten years. The undisputed testimony, with what was found by the jury, showed the existence of a nuisance to plaintiff, and that it is practically continuous and permanent, if the dam remain as it is. If necessary to relieve plaintiff from the injurious effects of these conditions, the court had power to abate the dam altogether. Courts, however, will in such cases give the relief that is necessary, without inflicting unnecessary detriment upon the defendant. Here it appeared that it was not necessary to abate the dam entirely in order to give plaintiff relief, and it being shown that the wasteways could be lowered so as to prevent backing of the water on plaintiff's land, the decree requires that the dam be changed so that this will be the result. The decree is most conservative, and in such form that the court may, in supplemental proceedings, modify the mandatory injunction in order to give finally the exact relief required by the case without injustice to either party. The objection made by the ninth assignment, that the decree is vague, indefinite and uncertain and does not instruct defendant what it is expected to do or the extent to which the dam is to be cut, etc., is overruled.

*Affirmed.*

Writ of error refused.