CITY OF MARSHALL v. ELGIN.†

(Court of Civil Appeals of Texas. Texarkana.
Jan. 26, 1912. Rehearing Denied
Feb. 1, 1912.)

1. MUNICIPAL CORPORATIONS (§ 450*)—LOCAL IMPROVEMENTS—CREATION OF DISTRICTS.

Under the power given the council of a city by its charter (Sp. Laws 1907, c. 20, §§ 231–233) to create an improvement district for payment of a street improvement, subject only to the limitation in the charter that a district shall include all and only such real estate as in the opinion of the council will be specially benefited by the improvement in proportion to its value, and to an amount at least as great as its pro rata of the cost of the improvement, or so much thereof as shall be paid solely by the owners of the real estate within such district, the council may at one of its sessions create several districts, and include in one part of the territory of another of them.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1073, 1074; Dec. Dig. § 450.*]

2. CONSTITUTIONAL LAW (§ 68*)—JUDICIAL POWERS—IMPROVEMENT DISTRICTS—POLITICAL QUESTIONS—CREATION.

The council of a city, as empowered by its charter, having created three improvement districts, and levied improvement taxes at different rates therein, the court may not revise its action, and hold that the effect of what it did was to create only one district, and levy taxes at different rates in different parts of it; the question of what shall be included in such a district being a political one.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 68.*]

3. MUNICIPAL CORPORATIONS (§ 449*)—ORDINANCES—TIME OF TAKING EFFECT—APPROVAL.

Ordinances levying taxes, though passed at the same session, do not levy the taxes at the same time; ordinances, under the charter of the city (Sp. Laws 1907, c. 20, §§ 41, 123), taking effect as they are approved by the mayor, and in the nature of things it being necessary that they be approved separately.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 449.*]

4. MUNICIPAL CORPORATIONS (§ 107*)—ORDINANCES—ORDER OF APPROVAL.

The order in which ordinances were approved, and therefore the order in which they took effect, is a question of fact.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 107.*]

5. MUNICIPAL CORPORATIONS (§ 538*)—TAXES—EXCEEDING LIMIT—BURDEN OF PROOF.

One seeking to enjoin collection of taxes levied by an ordinance on the real estate in improvement district No. 2, on the ground that with the taxes previously levied on all real estate in the city, and the taxes levied by another ordinance on the real estate in improvement district No. 3, the taxes levied on his property, included in both improvement districts, exceeded the limit allowed by the charter of the city, has the burden of showing that the ordinance levying the taxes on the property in district No. 3 was approved, and so took effect, before that levying the taxes in district No. 2.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 538.*]

6. MUNICIPAL CORPORATIONS (§ 449*)—ORDINANCES—ORDER OF APPROVAL—PRESUMPTION.

Where there were passed at the same session two ordinances—one levying taxes on the real estate in improvement district No. 2, the other levying taxes on the real estate in improvement district No. 3—it will be presumed that they were approved in the order of the numerical designation of the districts, and therefore, there being no repugnancy between them, whereby the last approved would nullify the other, were entitled to be given effect in that order.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 449.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

7. MUNICIPAL CORPORATIONS (§ 948*)—BONDS —ESTOPPEL TO ASSERT INVALIDITY.

As against a bona fide purchaser of bonds issued by a city for an improvement, it is estopped, by the recital in the ordinance for their issuance that everything precedent for their issuance had been duly done, to claim that specifications for the work required to be submitted by the city engineer to the council were defective; the city's charter (Sp. Laws 1907, c. 20, § 237) providing that the specifications may be amended by the council, and section 252 providing that the council may determine all questions of fact necessary to the exercise of its powers, and that it shall be presumed that all such questions have been properly determined so as to support all proceedings by it.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 948.*]

8. MUNICIPAL CORPORATIONS (§ 1000*)—IMPROVEMENTS — TAXES TO PAY BONDS — INJUNCTION—BURDEN OF PROOF.

Where a city is estopped to assert as against bona fide holders the invalidity of bonds issued for an improvement, taxpayers cannot defend against taxes to pay the bonds; and, in an action by them to enjoin collection of taxes, they have the burden of proving the bonds are not in the hands of such holders.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 1000.*]

Appeal from District Court, Harrison County; W. C. Buford, Judge.

Action by T. A. Elgin against the City of Marshall. Judgment for plaintiff, defendant appeals. Reversed and rendered.

Deeming it necessary to "grade, fill, pave and otherwise improve" portions of North Washington avenue, North Bolivar street, and Austin street, by a resolution adopted by its city council and approved by its mayor April 9, 1907, the city of Marshall, as authorized by its charter (sections 231 and 232, Special Laws 1907, p. 239), created an improvement district, designated in the resolution as "Improvement District No. 1," embracing territory specifically described by metes and bounds, and including "all property abutting on or in the vicinity of North Washington avenue, from the square to the Texas & Pacific Railway," by another resolution adopted and approved on the same day, created another improvement district, designated as "No. 2," embracing other territory specifically described by metes and bounds, and including "all property abutting on or in the vicinity of North Bolivar street, from the square to the Texas & Pacific Railway," and by still another resolution, also adopted and approved on the same day, created another improvement district, designated as "No. 3," embracing territory specifically described by metes and bounds, and including "all property abutting on or in the vicinity of Austin street from the west margin of Lafayette street westward to the east margin of Franklin street." North Washington avenue and Bolivar street were situated one block apart. They ran north and south, parallel with each other, from the public square of the city to said railway. Austin street ran east and west, and between Lafayette street and Franklin street intersected and crossed both North Washington avenue and North Bolivar street. In this way the corner lots at the crossing of North Washington avenue embraced in improvement district No. 1 were also included within the bounds of improvement district No. 3, and the corner lots at the crossing of North Bolivar street embraced in improvement district No. 2 also were included within the bounds of improvement district No. 3. April 10, 1907, after considering reports it had directed the city engineer and the city assessor and collector to make with reference to the proposed improvements in district No. 1 as created, the city council adopted and the mayor approved a resolution declaring that the improvement as proposed should be made, that the city should pay one-third the cost thereof, and that persons owning property abutting on or in the vicinity of North Washington avenue should pay two-thirds of the cost thereof. In this resolution the city engineer was directed to prepare complete specifications prescribing the "manner in which the work shall be done, and the nature and quality and character of the materials to be used." On the same day resolutions in all respects similar to the one just mentioned, but applying to districts Nos. 2 and 3, respectively, were adopted and approved.

July 9, 1907, the city council adopted and the mayor approved an ordinance authorizing the issuance of bonds of the city in the sum of $19,000, to mature 40 years after their date, "for the purpose of borrowing money upon the credit of improvement district No. 1," to be used in paying for the paving, etc., of streets within said district. The ordinance provided for the levy and collection of a tax of 75 cents on the $100 of the valuation of all real property in said district No. 1 to create a fund to pay the principal and interest thereon of the bonds. The form and contents of the bonds to be issued were prescribed, and as set out in the ordinance, among other stipulations, the bonds contained the following: "It is hereby certified, recited and declared that all acts, conditions and things required to be done precedent to and in the issuance of these bonds, have been properly done, happened and performed in regular and due form and time as required by law; that the indebtedness which is contracted by the issuance of these bonds does not, together with all other indebtedness of the city of Marshall existing at the time of the issuance of these bonds, exceed the limit fixed by the constitution and laws of the state of Texas and the charter of the city of Marshall. And it is hereby certified, recited and declared that the tax levied in order to provide for the interest and sinking-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

fund of this issue of bonds is within the limits prescribed by the constitution and laws of the state of Texas and the charter of the city of Marshall." On the day the ordinance just mentioned was adopted and approved the city council adopted and the mayor approved another ordinance in all respects similar to it, except that it provided for the issuance of bonds in the sum of $16,000 for the purpose of borrowing money "upon the credit of improvement district No. 2," to be used in paying for the paving, etc., of streets therein, and for the levy and collection of a tax of 82 cents on the $100 of the valuation of all real property therein to create a fund to pay the principal and interest of the bonds. On the same day the city council adopted and the mayor approved still another ordinance, in all respects similar to the two above mentioned, except that it provided for the issuance of bonds in the sum of $10,000, for the purpose of borrowing money "upon the credit of improvement district No. 3," to be used in paying for the paving, etc., of streets therein, and for the levy and collection of a tax of 40 cents on the $100 of the valuation of all real property therein to create a fund to pay the principal and interest of the bonds.

Afterwards the bonds provided for by the respective ordinances were issued, sold, and the proceeds of the sales, respectively, were applied as contemplated to the payment of the cost of paving, etc., done as contemplated in the respective districts.

At the time the tax in the respective districts was levied as stated, other tax levies amounting to $1.54 on the $100 of the valuation of all the real property therein had been made, so that it appeared that the total of the taxes levied, after the approval of said ordinances, on the real property in said district No. 1 amounted to $2.29, in district No. 2 to $2.36, and in district No. 3 to $1.94.

Appellee Elgin, the plaintiff below, owned real property abutting on North Bolivar street, in district No. 2. By his suit he sought to have the resolutions, ordinances, and bonds, and the indebtedness they evidenced against his own and other real property in said district No. 2, declared to be invalid, and to have the city enjoined from collecting any of the tax levied by said ordinances on real property in said district No. 2 to pay said indebtedness. "After all the evidence had been introduced," it is recited in the judgment rendered by the court below, "the plaintiff and defendant announced and agreed in open court that there were no matters of fact involved to be disposed of by a jury, and agreed that the jury should be discharged and that the court should render judgment therein." Thereupon, on the ground, as recited in the judgment, that the tax so levied upon real property in said district No. 2 was "unconstitutional and therefore void," said court rendered a judgment

enjoining the city from collecting "any taxes known as improvement district taxes upon the property of the said plaintiff * * * located within said improvement district No. 2, * * * being the levy of 82 cents on the $100 valuation of property in what is designated as improvement district No. 2 of said city of Marshall."

Beard & Davidson, for appellant. S. P. Jones, for appellee.

WILLSON, C. J. (after stating the facts as above). The conclusions of the trial court were not reduced to writing and filed, and so made a part of the record. Therefore we are not advised as to the ground upon which that court determined the tax complained of to be unconstitutional. An examination of the record has not disclosed to us, and appellee in his brief has not suggested, anything justifying that conclusion.

[1] The contention made in the court below, and here, that the city council, instead of creating three improvement districts as it intended to, created only one, and then arbitrarily levied a different tax for different portions of the district created, we think is not tenable. The contention seems to have been based on the fact that the territory included in the three districts was contiguous, and on the assumption that the resolutions, because adopted on the same day and at the same session of the city council, took effect simultaneously.

[2] The assumption that the resolutions took effect simultaneously was unauthorized, but whether they did or not was of no importance. The power to create such districts conferred on the city council by the charter of the city of Marshall was not limited in the way the objection suggests. The only limitation on the power was one requiring a district created to "include all such real estate, and only such real estate, as in the opinion of the city council will be specially benefited" by the improvements proposed, "in proportion to its value, and to an amount at least as great as its pro rata of the cost of such proposed improvement or improvements, or so much of said cost as shall be paid solely by the owners of the real estate within such improvement district." Charter of the city of Marshall, §§ 231, 232, 233; Special Laws 1907, p. 239. It was within the power, subject alone to the limitation in the charter just adverted to, of the city council at one of its sessions to create several improvement districts, and to embrace in any one of the districts territory included in another. It was beyond the province of the trial court, as it is of this court, to undertake to control it in the exercise of that power. "What property," said the court in Kettle v. City of Dallas, 35 Tex. Civ. App. 638, 80 S. W. 877, "shall be embraced within a municipal corporation or taxing district, and whether it shall be taxed for municipal

purposes, are political questions, to be determined by the lawmaking power, and an attempt by the judiciary to revise the legislative action would be usurpation." And see 1 Abbott, Municipal Corp. §§ 337, 558, 583. The city council having power to create, as it did, three districts, and the court being without right to revise its action in creating them, of course, it should not be held that the effect of what it did was to create only one district. Therefore the contention made that the effect of the ordinances levying the taxes in the respective districts was to levy different taxes in different portions of the same district was without support in the facts as they appeared to be.

[3-5] It was further insisted on the trial below, and is here, that, even though the effect of the action of the city council was to create three improvement districts, appellee was entitled to the relief he sought because the city council in levying the taxes exceeded its power. The theory upon which this contention was made was that, tax levies amounting to $1.54 having been previously made on property situated in the respective districts, the levy of 40 cents on the $100 of the valuation of property in district No. 3, including the corner lots at the crossing of North Washington avenue, must be added to the 75 cents levied in district No. 1 on those lots, and that said levy of 40 cents in district No. 3, including the corner lots at the crossing of North Bolivar street, must be added to the 82 cents levied in district No. 2 on those lots. As the effect of such additions would be to show the total levies made on the corner lots at the North Washington avenue crossing to be $2.69, and on the corner lots at the North Bolivar street crossing to be $2.76, it would thus appear that the city council in making the levies in the improvement districts had exceeded its power, at least so far as the corner lots were concerned; for it was without power to levy taxes on real property in the city in excess of $2.50 on the $100 of the assessed valuation thereof. Charter of the city of Marshall, § 248, Special Laws 1907, p. 244.

The contention made with reference to the effect of the ordinances creating the districts was, as stated, based on the assumption that those ordinances took effect simultaneously. So the contention made that the tax levies in the districts were void because in excess of the power of the council is based upon the assumption that the ordinances levying the taxes took effect simultaneously. "It is beyond dispute," appellee says in his brief, "that the taxes were all levied at one and the same time." We do not think so. On the contrary, we think it conclusively appeared that they were levied at different times, and not at one and the same time.

The levies in the respective districts were, as stated, made by different ordinances. These ordinances took effect as they were approved by the mayor. Charter of the city

143 S.W.—43

of Marshall, §§ 41, 123, Special Laws 1907, pp. 204, 216. In the very nature of things they must have been so approved separately, and hence must have taken effect at different times. The order in which they were approved was a question of fact. Lewis' Suth. Stat. Const. §§ 180, 280. The burden was on appellee to show that order, and so establish, if it would establish it, that at the time the ordinance levying the tax of 82 cents in district No. 2 was approved it was in excess of the power of the council, so far as said corner lots were concerned, because the ordinance levying the tax of 40 cents in district No. 3, also including said lots, was in effect.

It is obvious that, if the ordinance levying the tax of 82 cents in district No. 2 took effect before the ordinance levying the tax of 40 cents in district No. 3, the council did not exceed its power in levying said tax in district No. 2. It is as obvious that if the tax, when levied, was valid, it would not have been rendered invalid by an attempt afterwards made by the council in excess of its power to levy a further tax on property in the district.

[6] Not only did appellee fail to discharge the burden resting on him to show that at the time the ordinance levying the tax in district No. 2 took effect the levy was invalid because in excess, when added to taxes previously levied on property in that district, of the limit of $2.50 on the $100 of the assessed value of the property, but it may be said, indulging a presumption the law authorized, that it affirmatively appeared that it was not invalid for that reason. In determining the order in which the ordinances took effect the rule applicable to statutes should have been applied. 2 Abbott Mun. Corp. § 564. That rule, as stated by Mr. Sutherland, is: "Where two acts are approved on the same day, the presumption is that they were approved in numerical order; but the court will take judicial notice of the facts and ascertain the actual order of approval, and, if the two acts are inconsistent, the one last approved will prevail, though it may have been the first to pass the Legislature." 1 Lewis' Suth. Stat. Const. § 180.

This rule except so far as it required the court to take judicial notice of the order in which the resolutions were approved (City of Austin v. Walton, 68 Tex. 509, 5 S. W. 70), had the ordinance levying the tax in district No. 2 and the ordinance levying the tax in district No. 3 been repugnant to each other, would, we think, have required the court, in the absence, as was the case, of testimony to the contrary, to presume that the ordinance levying the tax in district No. 3 was last approved, and therefore was entitled to be given effect as against the ordinance levying the tax in district No. 2; for, under such circumstances, we think the court should have indulged the presumption that the taxes were levied in the districts in the or-

der of their numerical designation. There was, however, no repugnancy between the two ordinances, and therefore one of them could not be held to have nullified the other. Both took effect, but one before the other, in the order they respectively were approved. Indulging the presumption to be resorted to in the absence of testimony showing the contrary, as stated above, it appeared that the ordinance levying the tax in district No. 2 was first approved, and therefore was in effect when the ordinance levying the tax in district No. 3 was approved. So it appeared at the time it made it, it was within the power of the council to make the levy in district No. 2.

[7] By sections 231 and 232 of the charter the city council was authorized, by resolutions to be adopted by it and approved by the mayor, to create districts like those it did create. Section 233 directed that a resolution creating such a district should specify the general nature and character of the proposed improvements, and should "direct the city engineer to prepare and submit to the city council an estimate of the cost of same." Section 234 required that such resolution should "direct the city assessor and collector of taxes to report in writing to the city council the total assessed value of all the real estate within such improvement district according to the last annual assessment." Section 236 declared that the reports of the engineer and assessor and collector so provided for should be "advisory only, their purpose being to furnish the city council with information that will aid the city council in determining whether or not such proposed improvement or improvements shall be made, and how and by whom the cost of same shall be paid; and no errors or omissions in such reports, or either of them shall invalidate any of the proceedings that may be had under the order or authority of the city council." Section 237, in part, was as follows: "After receiving and considering the reports of the city engineer and city assessor and collector of taxes hereinbefore provided for, if the city council is then of the opinion that the proposed improvement or improvements shall be made, the city council shall direct the city engineer to prepare complete specifications for the same, which specifications shall prescribe the manner in which the work shall be done, and the nature and quality and character of the materials to be used, and shall also contain such other provisions as the city council may deem proper. When such specifications are submitted to the council by the city engineer, they may be amended by the city council to whatever extent may be deemed proper, subject to the provisions of this act, and may be adopted by the city council." Special Laws 1907, pp. 239, 240.

In the court below the appellee insisted, and he insists here, that the tax levied in district No. 2 was invalid because (as he as-serts) the city council did not have the city engineer to prepare and file the specifications contemplated by said section 237.

As noted in the statement, the resolution adopted April 10, 1907, directed the city engineer to prepare such specifications. He did prepare specifications, and it appeared from the testimony that same were accepted by the city council and ordered to be filed at its meeting held April 25, 1907, and finally approved at its meeting held May 18, 1907.

The specific objections urged by appellee to the specifications were that they did not show "the manner in which the pavement was to be laid, the width of the pavement, etc., as required by section 237 of the city charter," nor "with what material the pavement was to be composed, or its thickness."

We do not understand from the testimony that the specifications were incomplete in the respects urged; but, had it appeared that they were, we do not think appellee would have been entitled to the relief he sought.

The question must be viewed from the standpoint of an innocent holder for value of the bonds for the payment of which the tax was levied; for, as said by the Supreme Court in City of Tyler v. Tyler Building & Loan Association, 99 Tex. 6, 86 S. W. 752, "taxpayers can defend against a city for the assessment of taxes made to pay interest and create a sinking fund on bonds which are void, but they must prove conclusively that the bonds are void in the hands of any holder, so that there can be no recovery by the holders of the bonds against the city; otherwise there would be the anomalous condition of a city, which represents its inhabitants, being bound by an obligation which is not binding upon the people who compose the city."

The charter provided that the city council should "have the power to determine any and all questions of fact necessary to the exercise and discharge of its duties and powers, and it shall be presumed that all such questions of fact have been properly determined in such a manner as to support the validity and regularity of any and all proceedings of the city council." Section 252.

As noted in the statement above, the bonds and the ordinance providing for the issuance thereof recited and declared that "all acts, conditions and things required to be done precedent to and in the issuance of these bonds, have been properly done, happened and performed in regular and due form and time as required by law."

The city having the power, as we have determined it did to levy the tax, we think it was estopped by the recital quoted above from setting up, as against an innocent holder of the bonds, the fact, had it been a fact, that the specifications were defective. "A public corporation," says Mr. Abbott, "is estopped from alleging irregularities in assessment proceedings for the purpose of defeat-

ing its obligations in the hands of bona fide purchasers for value. Failure or neglect by a corporate official to properly perform an official duty will not, where the local improvement has been fully constructed, invalidate the proceedings and render the assessment void." 1 Mun. Corp. § 370. And see 2 Cooley on Taxation, p. 1440; City of Tyler v. Tyler Building & Loan Ass'n, 99 Tex. 6, 86 S. W. 751; Citizens' Bank v. City of Terrell, 78 Tex. 450, 14 S. W. 1005; Waite v. Santa Cruz, 184 U. S. 316, 22 Sup. Ct. 327, 46 L. Ed. 563.

[8] In the application of the principle announced in the quotation made above, we think it should have been assumed by the trial court, and should be by us, that the bonds issued were in the hands of bona fide purchasers for value, because the burden was on appellee to prove conclusively that they were "void in the hands of any holder." City of Tyler v. Tyler Building & Loan Ass'n, supra.

As we view the record, the judgment should have been in favor of appellant. Therefore it will be reversed, and a judgment will be here rendered that appellee take nothing by his suit.