**CITY OF DALLAS et al. v. EARLY et al.***
(No. 9507.)

(Court of Civil Appeals of Texas. Dallas. Feb. 13, 1926. Rehearing Denied March 20, 1926.)

1. **Abatement and revival ⬅81—Parties ⬅88 (4)—Plea of misjoinder of parties plaintiff and causes of action is dilatory in nature, and should be presented in limine, and comes too late when first presented by special exception in answer (Rev. St. 1925, art. 2012).**

Plea of misjoinder of parties plaintiff and causes of action is dilatory in nature, and should be presented in limine, and, when raised by special exception in answer to the merits, is not in due order of pleading under Rev. St. 1925, art. 2012.

2. **Action ⬅50(1).**

Unsettled matters between parties so related that investigation of one will aid the other may be joined in one suit.

3. **Action ⬅50(1).**

Unrelated matters between parties of same nature which can be heard together without confusion may be joined in one suit.

4. **Action ⬅50(3)—Where all parties plaintiff to abate nuisance caused by overflowing drainage system alleged flooding of lands, and part alleged erosion, joinder was proper.**

Where all plaintiffs to suit to abate nuisance caused by overflowing drainage system alleged flooding of land, and part of plaintiffs alleged erosion of land, joinder was proper, matters being so related that investigation of one necessarily developed facts as to the other, or at all events they were of the same nature, and relief sought was similar so that they could be heard together without confusion.

5. **Municipal corporations ⬅839—Charter provision, requiring notice to city of defects, does not apply to nuisance caused by overflowing drainage system (Dallas City Charter, art. 14, § 11, as amended in 1921).**

Dallas City Charter, art. 14, § 11, as amended in 1921, requiring notice of defect to mayor or engineer before city should be liable for damages or injury occasioned by defects in public works, deals exclusively with liability for damages to persons or property, and does not apply to action to abate nuisance caused by overflowing drainage system.

6. **Appeal and error ⬅1050(1)—Admission of ordinances declaring untreated stagnant pool of water "nuisance" in suit against city to abate nuisance caused by overflowing drainage system, if error, was harmless.**

Admission of ordinances declaring untreated stagnant pools of water nuisances in suit against city to abate nuisance caused by overflowing drainage system, if error, was harmless, as such things were nuisances at common law, and are none the less such when done by city in exclusive management of waterways and drains; "nuisance" being anything that endangers life or health, that gives offense to senses, or that obstructs reasonable and comfortable use of property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

7. **Municipal corporations ⬅846 — Resort to equity to abate nuisance of overflowing drainage system held justified.**

Resort to equity to abate nuisance of overflowing drainage system, which was a constant menace to health of plaintiffs, seriously interrupted comfortable enjoyment of their homes, impaired value of their properties, and visited injuries irreparable because incapable of being compensated in damages, was justified, as against contention that there was adequate remedy at law.

8. **Municipal corporations ⬅736—City held liable for nuisance created by overflowing drainage system without regard to negligence.**

City of Dallas *held* liable for nuisance created by overflowing drainage system without regard to negligence, it performing duties imposed by law for benefit of its own inhabitants, not for public at large, and in its corporate capacity rather than as agency of state.

9. **Nuisance ⬅11—Suit for abatement of nuisance not barred by limitation.**

Suit for abatement of continuing nuisance of overflowing drainage system may not be barred by statute of limitation, as right to maintain nuisances cannot be acquired by prescription.

10. **Constitutional law ⬅72—Court of equity may not instruct board of commissioners of city of Dallas as to means they shall adopt in abating nuisance caused by overflowing sewers (Dallas City Charter, art. 11, § 4).**

Power to provide and maintain for city of Dallas a drainage system under article 11, § 4, of its charter, is vested in board of commissioners, and questions relating to means of abating nuisance caused by overflowing drains are political, to be decided by them, free from direction by court of equity.

11. **Municipal corporations ⬅846—Court has power to order abatement of nuisance caused by drainage system, but should not dictate character of drains to be constructed.**

Court has power to order city and officials to abate nuisance of overflowing sewer and drainage system, and power to punish respondents for contempt, but should not dictate character and means of drains to be constructed.

12. **Appeal and error ⬅1152 — Unauthorized judgment as to means to be used by Dallas board of commissioners in abating nuisance will be reformed to merely require abatement (Dallas City Charter, art. 11, § 4).**

Judgment requiring Dallas board of commissioners to abate nuisance in manner stated will be reformed to allow them to use their judgment as to means under Dallas City Charter, art. 11, § 4.

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Suit by C. S. Early and others against the City of Dallas and others. From a judgment

for plaintiffs, defendants appeal. Reformed and affirmed.

James J. Collins, Hugh S. Grady, H. P. Kucera, and W. Hughes Knight, all of Dallas, for appellants.

Andrew J. Priest and Sarah T. Hughes, both of Dallas, for appellees.

LOONEY, J. Appellees sued the city of Dallas and its mayor and board of commissioners to secure the abatement of nuisances alleged to exist by reason of the manner in which the city maintained and operated certain drainage ditches and sewers.

It was alleged, in substance, that, after each successive rainfall, these waterways overflowed their banks, eroded the lots adjoining, and flooded the property of appellees; that water was permitted to collect and remain in the drains until it became stagnant, emitted foul odors, and bred mosquitoes; that, by reason of the lots being flooded, the emission of foul odors from stagnant water that passed over and upon their lots, and the mosquitoes that came out and passed in and upon their property, all and each caused appellees great physical annoyance, endangered their health, seriously interfered with the comfortable use and enjoyment of their homes, and injured and impaired the value of the same.

The case was submitted to a jury on special issues, and, as their answers were favorable to appellees, the court rendered judgment in their favor, from which appellants prosecute this appeal.

The assignments and propositions presented for our consideration are quite numerous, but, in our opinion, all material questions may be reduced to those that we discuss below.

1. Appellants insist that there was a misjoinder of parties and causes of action, in this, that, while all the plaintiffs claim to have been similarly affected by reason of the flooding of lots, from offensive odors, and mosquitoes that came from the drainage ditches, only a few of the plaintiffs alleged that their lots were damaged from erosion.

[1] The question of misjoinder was raised by special exception that appeared in appellants' answer to the merits of the case. The plea of misjoinder is dilatory in nature, and should have been presented in limine. As the question was presented, it was not in due order of pleading. Revised Statutes, art. 2012 (1909) (1268); Hill v. Newman, 3 S. W. 271, 67 Tex. 265; Kemendo v. Fruit Dispatch Co., 131 S. W. 73, 76, 61 Tex. Civ. App. 631.

[2, 3] However, if the question of misjoinder had been properly presented, appellants' contention could not be sustained. The rule that obtains in this state with reference to the joinder of causes of action is very liberal. If there exist unsettled matters between parties so related as that an investigation of one will aid the other, it is proper to join them in one suit. Even if the matters are not related, yet, if they are of the same nature, and can be heard together without confusion or uncertainty, they may be joined.

[4] The alleged matter that was peculiar to a few of the plaintiffs was so related to the cause of action common to all that an investigation of one necessarily developed the facts with reference to the other, or, at all events, they were of the same nature, the relief sought was similar, and the matters could with propriety be heard together without confusion or uncertainty. Towne's Texas Pleading (2d Ed.) pp. 212–218.

[5] 2. Appellants make the further contention that the court below should have sustained the general demurrer urged by them to the petition of appellees because they failed to allege that, prior to the injuries complained of, notice of the defects in the sewer system was given the mayor or engineer of the city, or that said officials or either of them knew from a personal inspection of the existence of said defects, 24 hours prior to the alleged injuries, and, failed, after obtaining knowledge of the defective condition, to use proper diligence to rectify the same.

This contention is predicated on article 14, section 11, of the charter of the city of Dallas, as amended in 1921, which reads as follows:

"The city of Dallas shall never be liable on account of any damages or injury to person or property arising from or occasioned by any defect in any public street, highway, or grounds or any public work of the city, unless the specific defect causing the damage or injury shall have been actually known to the mayor and city engineer by personal inspection for a period of at least twenty-four hours prior to the occurrence of the injury or damage, unless the attention of the mayor or city engineer shall have been called thereto by notice thereof in writing at least twenty-four hours prior to the occurrence of the injury or damage and proper diligence has not been used to rectify the defect after actually known and called to the attention of the mayor or city engineer as aforesaid. The notice hereby required to be given to the mayor or city engineer of a specific defect causing the damage or injury shall apply whether the defect arose from any omission or from the act of the city itself, through its agent, servant or employee or otherwise."

We are of the opinion that this charter provision has no application to the cause of action urged by the appellees. It deals exclusively with the liability of the city for damages to persons or property, occasioned under the circumstances mentioned; was not intended to apply to an action for equitable relief from a continuing nuisance; and cannot be extended by implication beyond its terms or clear intent. El Paso Union Passenger Depot Co. v. Look (Tex. Civ. App.) 201 S. W. 714; City of Dallas v. Shows (Tex. Com. App.) 212 S. W. 633, 634; Wall v. Salt Lake City, 168 P. 766, 50 Utah, 593; Carthew v. Platteville, 147 N. W. 375, 157 Wis.

322; Sammons v. Gloversville, 67 N. E. 622, 175 N. Y. 346; 28 Cyc. 1451.

[6] 3. Appellants assign as error the action of the court in overruling its special exception to that part of the petition of appellees that set up the ordinances of the city of Dallas defining nuisances, and in admitting the same in evidence, over their objection, for the reason that they were intended to regulate the use by owners of private property, and had no application to the manner in which the city maintained and operated its drains and sewers. These ordinances are as follows:

Article 633:

"That it shall hereafter be unlawful for the occupant or owner of any premises in the city of Dallas, or within three thousand feet of the corporate limits thereof, or the agent of the owner if the owner be a nonresident or absent from the city, to cause, suffer or permit any collection of standing or flowing water in which mosquitoes breed or are likely to breed, on such premises unless such collection of water is treated in the manner prescribed by the health officer of the city of Dallas or his duly authorized representative, so as to prevent the breeding of mosquitoes, and any such collection of water so unlawfully maintained is hereby declared to be a nuisance."

And article 667 of the Revised Code of Criminal and Civil Ordinances of the City of Dallas, as follows:

"Every lot or parcel of ground upon which any pool of stagnant water has accumulated or which in any other respects may have a tendency to endanger (engender) disease, shall be deemed and is hereby declared a public nuisance and the owner, or owners, lessee or lessees, of such lot or parcel of ground, upon being notified in writing by the mayor or health officer, shall fill up the same with sand or earth and cleanse or purify the same  or cause it to be done in such mode and manner and within such space of time as may be limited and designated in such notice; and in filling up said lots or parcel of ground, shall conform to such grade as the board of commissioners shall establish or to the satisfaction of the health officer of said city."

The error of the court, if any, in the rulings complained of was in our opinion harmless, and did not result in any prejudice to appellants.

A "nuisance," in legal parlance, is anything that endangers life or health; that gives offense to the senses; or that obstructs the reasonable and comfortable use of property.

The evidence, aside from these ordinances, abundantly, and without material conflict, established the facts that the waterways, as maintained by the city, collected and held water that became stagnant, emitted offensive odors that enveloped the homes of appellees; that mosquitoes bred therein, swarmed out and over their property; that this was offensive, a constant menace to health and prevented the comfortable use of their property and homes.

These ordinances defining nuisances simply announced the common-law doctrine, that is, such acts at common-law would have been held to constitute nuisances, and they are none the less such when committed by the city in the management of the waterways and drains under its exclusive control.

[7] 4. The contention is further made that appellees should be defeated for the reason that they had an adequate remedy at law and were not entitled to the injunctive relief sought.

The nuisances shown to exist in this case, until abated, will be a constant menace to the health of the appellees and members of their families; will seriously interrupt the comfortable enjoyment of their homes; will impair the value of their properties, and visit upon them injuries of a nature irreparable, because incapable of being compensated in damages. A situation like this justified resort to equity. Burditt v. Swenson, 17 Tex. 489, 67 Am. Dec. 665; Galveston, etc., v. Miller (Tex. Civ. App.) 93 S. W. 177; City of Ennis v. Gilder, 74 S. W. 585, 32 Tex. Civ. App. 351; Pittsburg v. Smith (Tex. Civ. App.) 230 S. W. 1113; 28 Cyc. 1229–1230.

[8] 5. The insistence is also made that, in the absence of allegations and proof that appellants were guilty of negligence, appellees were not entitled to the relief sought.

In the construction and maintenance of the sewers and drains, the city of Dallas performed duties that were imposed upon it by law for the benefit of its own inhabitants, and not for the public at large. It acted in the respects mentioned in its corporate capacity rather than as an agency of the state, and was, therefore, suable for the nuisances created without regard to the question of negligence. White v. San Antonio, 60 S. W. 426, 94 Tex. 313; Ostrom v. San Antonio, 62 S. W. 909, 94 Tex. 523; Brewster v. City of Forney (Tex. Civ. App.) 196 S. W. 636, 638, 639; Brewster v. City of Forney (Tex. Com. App.) 223 S. W. 176 (paragraph 1); City of Clarendon v. Betts (Tex. Civ. App.) 174 S. W. 958, 959; City of Coleman v. Price, 117 S. W. 905, 906, 54 Tex. Civ. App. 39; City of Paris v. Jenkins, 122 S. W. 411, 412, 57 Tex. Civ. App. 383; 29 Cyc. 1155.

[9] 6. Appellants say that the cause of action sued on by appellees, if any ever existed, was barred by the statutes of limitation prior to the institution of the suit.

The doctrine in this state, thoroughly well established, is that the right to maintain nuisances cannot be acquired by prescription. It follows, therefore, that limitation is no defense to a proceeding instituted for the abatement of a continuing nuisance. Rhodes v. Whitehead, 27 Tex. 304, 84 Am. Dec. 631; City of Ennis v. Gilder, 74 S. W. 585, 587, 32 Tex. Civ. App. 351; Boyd v. Schreiner (Tex. Civ. App.) 116 S. W. 100; 28 Cyc. 1207.

[10, 11] 7. Appellants contend that the questions as to the character and means of

drainage constructed and maintained by the city of Dallas to carry away storm waters are political or legislative, the determination of which rests exclusively within the discretion of its board of commissioners, and with respect to which these officers are not subject to the control of the courts.

This contention is based on the following provisions of the decree below:

"It is therefore ordered, adjudged, and decreed by the court that the city of Dallas and its mayor and board of commissioners, and their successors in office, are hereby ordered and commanded to construct a storm sewer of such materials as will prevent the washing of any of the plaintiffs' lands, the same to begin at the present storm sewer between La Fayette street and Munger avenue on Carroll avenue, running on the line of Mill creek in a westerly direction between Munger avenue and La Fayette street in said city of Dallas, and connecting with the present storm sewer maintained by said city of Dallas which begins 89.5 feet east of the east property line of Peak street between Munger avenue and La Fayette street, said storm sewer to be of like size and dimensions as the said storm sewer, beginning 89.5 feet east of Peak street, same to be constructed upon a uniform grade from the present Carroll avenue storm sewer to the present Peak street storm sewer."

Other provisions of the decree enjoined appellants from maintaining certain drains which would necessitate a re-establishment, directs the removal of certain culverts constituting a part of the drainage system, directs the removal of certain pipes now installed in culverts, and the leveling of a certain ditch even with the bottom of another sewer.

The power to provide a general sewerage and drainage system for the city of Dallas is conferred by law upon its board of commissioners, as shown by section 4 of article 11 of its charter as follows:

"The board of commissioners shall have power by ordinance to provide for and construct a general sewer and drainage system, to be divided into public and private sewers and drains, and to be constructed, maintained and regulated in such manner and of such material as the board of commissioners may prescribe. Sewers may be established as the board of commissioners may direct and there may be extension of branches and sewers already constructed or entirely new throughout, as may be deemed expedient. The board of commissioners may, if necessary, levy a tax on all taxable property in the entire city to pay for the construction and repair of such public sewers, which shall be called a special "sewer tax," and shall be used solely for such purpose."

Thus it is apparent that power to provide and maintain for the city of Dallas a sewer or drainage system is vested in its board of commissioners, and the decision of all questions relating to the location, size, kind, or character of drains and sewers to be installed, the grade on which they shall be built, the material to be used in their construction, and the manner in which they are maintained, are each and all political or legislative questions to be determined by this legislative branch of the city government.

The court below was within its power in ordering the abatement of the nuisances, but in our opinion it went afield in directing appellants to accomplish these results by the doing of certain acts that required the exercise of political or legislative power, such as the construction of a sewer at a certain location, of a named size and grade, the discontinuance of a certain drain necessitating a re-establishment, the removal of certain culverts, and obstructions from others, and requiring the leveling of a certain drainage ditch even with the bottom of another sewer. In those respects the court in our opinion substituted its judgment and discretion for that of the city commissioners, and attempted the exercise of political or legislative powers vested exclusively in that governing body. The court very properly required the abatement of the nuisances, and may hold appellants amenable for a disobedience of its order, but they must be left at liberty, in the exercise of the power vested in them, to adopt the necessary ways and means of accomplishing the desired results.

[12] The criticism of the judgment in the respect under consideration is, in our opinion, well taken, which necessitates its reformation. City of Marshall v. Elgin (Tex. Civ. App.) 143 S. W. 670, 672, 673; City of Dallas v. Dallas Consolidated, etc., 148 S. W. 292, 105 Tex. 337; Lyle et al. v. Longan (Tex. Civ. App.) 162 S. W. 1156; Woolverton v. Albany, 52 N. E. 455, 152 Ind. 77.

It is our opinion, after a careful consideration of all assignments and propositions. that they are without merit, and should be overruled, except with respect to the last proposition discussed. The judgment will be reformed to read, after the recitations and formal parts, as follows:

It is therefore ordered, adjudged, and decreed by the court that the plaintiffs C. S. F. Early, E. C. Smith, G. W. Berry, H. C. Remington, L. W. Richardson, W. L. Burnett, K. B. Wolff, V. D. Patterson, George Hollifield, J. M. Dobie, J. L. Berry, Chas. Lang, and W. C. Davis are entitled to the relief sought as follows: That the city of Dallas, Louis Blaylock, its mayor, and John C. Harris, Gus Wylie, Harry Gowins, and Louis S. Turley, members of the board of commissioners of said city and their successors in office, are hereby enjoined and prohibited from permitting water to stand in the storm sewer beginning 89.5 feet east of Peak street between La Fayette and Munger avenues in said city, and in the storm sewer that empties into Mill creek at Carroll avenue between La Fayette and Munger avenues and in the open ditch connecting said storm sewers, and from permitting any erosion or flooding of the lots of either of the plaintiffs by storm waters flowing into Mill creek between Car-

roll avenue and Peak street, and from maintaining said ditch or the open storm sewer beginning 89.5 feet east of Peak street between Munger and La Fayette streets and the storm sewer emptying into Mill creek at Carroll avenue between La Fayette and Munger avenues, in such manner as that the lots and premises of the plaintiffs, or either of them, will be eroded or flooded from storm waters or in such manner as to cause water to collect and stand in said ditches or sewers and become stagnant, emit foul odors, or breed mosquitoes; in other words, defendants are directed to abate these nuisances, and take such action and do such things within the scope of their power and authority under the law as may be necessary to accomplish these results. It is further ordered that the defendants pay all costs of this action, for the collection of which execution may issue.

The judgment of the trial court as thus reformed is affirmed, and appellants are adjudged to pay the costs of this court, as well as the costs created below, for which execution may issue.

Reformed and affirmed.